Golia, J.
(dissenting and voting to reverse the final judgment and to remit the matter to the Civil Court for entry of a final judgment awarding possession to landlord in the following memorandum). This action was commenced after landlord observed a videotape of Mr. Irizarry, a tenant in the building, spray-painting graffiti. That graffiti consisted of two rows of letters and cartoon designs, which filled the wall in a common hallway of plaintiff’s multifamily building. That videotape not only showed this tenant spray-painting the graffiti, indeed it also showed him stepping back in order to admire his handiwork, which was signed with his stylized initials. This conduct clearly constituted “criminal activity” (see Penal Law § 145.60 [Graffiti Law]; see also Penal Law § 145.00 [1] [criminal mischief in the fourth degree]).
Mr. Irizarry’s actions also constituted a violation of the lease provisions that forbid defacing the premises and committing vandalism therein. These actions further violated section 23 (c) (6) (a) of the lease, which provides that certain criminal activity on the premises constitutes a ground for termination of a tenancy. That section states:
“23. Termination of Tenancy:
“c. The Landlord may terminate this Agreement for the following reasons: . . .
“(6) criminal activity by a tenant. . .
“a. that threatens the health, safety, or right to peaceful enjoyment of the premises.”
Although the Civil Court found that tenant had committed the conduct alleged, that court nevertheless held that landlord had failed to demonstrate that such conduct threatened the health or safety of the other residents or their right to the peaceful enjoyment of the premises. Based upon that holding, the Civil Court dismissed the petition. My colleagues agree. I do not.
This is not a case where a young child of the tenant has painted graffiti on the wall because the child disobeyed his parents. In this case, the graffiti was placed on the wall by the tenant and, as an adult, he is responsible for his own criminal actions.
The Civil Court was required to follow the legislative findings that formed the predicate for the law and not substitute its own sensibilities in place of those of the Legislature, which enacted the statute. Graffiti “vandals,” in my opinion, are not graffiti “artists,” inasmuch as there was no consent to or permission for Mr. Irizarry’s actions.
*54 The Legislature stated in its legislative findings in enacting Penal Law § 145.60 that
“[t]he legislature hereby finds and declares that graffiti vandalism poses a serious problem for . . . the city of New York. The unabated proliferation of graffiti is a physical blight . . . and costs taxpayers, merchants and homeowners millions of dollars to remove and repair.
“The legislature also finds that . . . graffiti presents the image of a deteriorating community . . . Not only is graffiti an assault upon individual sensibilities, it is another reason for people to leave the city prompting a further downward spiral of economic and social conditions with severe consequences for the city of New York.” (L 1992, ch 458, § 1 [emphasis added].)
The HUD-prescribed “model Lease,” as supplemented by the addenda thereto, executed by tenant in 1995, explicitly provides that a single criminal act may constitute a material noncompliance with the lease and good cause for the termination of a tenancy. The Legislature has determined that graffiti vandalism merits a criminal sanction, punishable by up to a year’s imprisonment, and it should not be held, as a matter of law, that such conduct, which also constitutes criminal mischief, even by a named long-standing tenant, cannot be construed to be a material noncompliance meriting the lease’s termination.
I, for one, do not see how a “physical blight” which exacts “costs [to] . . . homeowners,” “presents the image of a deteriorating community,” and prompts a “downward spiral of economic and social conditions” does not threaten the right to the peaceful enjoyment of the premises by other tenants of the within apartment building.
Accordingly, I would reverse the final judgment dismissing the petition and would remit the matter to the Civil Court for entry of a final judgment awarding possession to landlord.
Pesos, EJ., and Steinhardt, J., concur; Golia, J., dissents in a separate memorandum.